UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YOURK
-------------------------------------------------------------------------x
JOHN SALA on behalf of his minor son,               :
JOHN SALA, JR.,                                      :
                                                     :        **06 CV 8185 (HB)**
                            Plaintiff,               :
                                                     :        **OPINION & ORDER**
                    -against-                         :
                                                     :
WARWICK VALLEY CENTRAL SCHOOL                        :
DISTRICT, DR. FRANK GREENHALL,                       :
SUPERINTENDANT OF SCHOOLS, sued in his              :
individual capacity, and JAMES SCIARA,              :
sued in his individual capacity,                     :
                                                     :
                            Defendants.              :
-------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

John Sala, Jr., a minor and high school senior when this complaint was filed, was dismissed from the Warwick High School football team in the middle of the 2006 season after two run-ins with law enforcement and school authorities.  As a consequence of his son's dismissal, Plaintiff John Sala ("Plaintiff") asserts constitutional and breach of contract claims against the Warwick Valley Central School District ("District"), Superintendant Frank Greenhall ("Greenhall") and football coach James Sciara ("Sciara").   Specifically, Plaintiff alleges that Defendants violated John Sala, Jr.'s procedural and substantive due process rights, violated the First Amendment by retaliating against Plaintiff for his use of the legal system in an attempt to vindicate John Sala, Jr.'s rights, and breached a signed agreement that was meant to address the appropriate sanction for the first of the two incidents.  Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56.  For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

In early September 2006, John Sala, Jr., then a senior at Warwick High School and one of four co-captains of the football team, invited three of his teammates to his parent's home to watch a video of an earlier game. Sala, Jr. Dep. 35.  One of John Sala, Jr.'s teammates had been driving recklessly in the neighborhood and was parked directly in front of the Sala home when town police responded to complaints from the neighbors.  *Id.*  When no one answered the doorbell, the officers walked around the house and saw the friends drinking beer.  *Id.*  They also found a small quantity of marijuana.  *Id.*; Am. Compl. ¶ 10.  When none of the teammates

admitted to possessing the marijuana, John Sala, Jr. was arrested.  Sala, Jr. Dep. at 35.
According to the Amended Complaint, the team quarterback and son of an assistant coach and
District president escaped the premises undetected.  Am. Compl. ¶11.

Following the incident at the Sala home, John Sala, Jr. was suspended from the football
team for the balance of the 2006 season.  Am. Compl. ¶13.  Through counsel, Plaintiff appealed
to the District Superintendant, Greenhall, and pursuant to a signed settlement agreement the
suspension was reduced to four weeks, conditioned on, *inter alia*, John Sala, Jr. adhering to the
school's code of conduct.  Affidavit of Frank Greenhall, dated Mar. 14, 2008 ("Greenhall Aff."),
Ex. A ("Settlement Agreement").

A few weeks later, during the period of his suspension, the District's Athletic Director,
John Russo, observed John Sala, Jr. driving too fast in a school parking lot after a football game
and asked him to slow down.  Am Compl. ¶19.  Russo maintains that John Sala, Jr. responded by
directing profanity at him, though John Sala, Jr. denies this.  Am. Compl. ¶19; Affidavit of
Patrick J. Fitzgerald, dated Mar. 14, 2008 ("Fitzgerald Aff."), Ex. C.  John Sala, Jr. was then
ticketed by a police officer in the parking lot for driving after 9:00 p.m. in violation of the terms
of his "junior license." Am. Compl. ¶ 21; Affidavit of Kathy Ann Wolverton, dated Mar. 14,
2008 ("Wolverton Aff."), Ex. A.   The following Monday, the Salas met with Coach Sciarra and
several of the assistant coaches to discuss the incident, and Sciarra dismissed John Sala, Jr. from
the football team.  *Id.* at ¶26.  Thereafter, again represented by counsel, the Salas appealed the
dismissal to Superintendant Greenhall.  At a meeting with Greenhall on October 2, 2006,
Plaintiff and his attorney argued that Russo had a "longstanding antipathy toward the Sala
family" and that "John Sala, Jr. had done nothing to warrant his dismissal from the football
team." *Id.* at ¶35.  Not a scintilla of evidence was provided to support this allegation.  The next
day, in a detailed letter explaining the basis for his decision, Greenhall sustained Sciarra's
decision to dismiss John Sala, Jr. from the team, and advised Plaintiff that he could appeal the
decision to the School Board which was to next meet on October 16, 2006.  Greenhall Aff., Ex.
B.  Instead, Plaintiff filed this action on October 4, 2006.

Plaintiff initially sought, among other relief, a temporary restraining order and
preliminary injunction enjoining Defendants from disallowing John Sala, Jr.'s participation on
the football team.   Two days later, the District consented to a temporary restraining order that
reinstated John Sala, Jr. to the football team pending further order of the Court.  Following a
hearing, on October 18, 2006 Judge Robinson granted an injunction that had terminated John

Sala, Jr.'s suspension from the football team.[1]  Slip Op., dated Oct. 18, 2006.  Pursuant to the Court's Order, John Sala, Jr. rejoined the football team.  But Coach Sciarra played him only infrequently and only on defense, even though he had previously acknowledged to Plaintiff that John Sala, Jr. was "one of the stars" of the team.  Am. Compl. ¶51-53.  John Sala, Jr. graduated from Warwick High School in the spring of 2007 and, in 2008 was attending East Carolina University, without a football scholarship.[2]  Sala, Jr. Dep. 7.

## LEGAL STANDARD

A court may grant summary judgment "only if it can be established that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 367-68 (2d Cir. 2003).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 247-48 (1986). A dispute concerning a material fact is genuine if the "'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson,* 477 U.S. at 248).

"In determining whether the moving party is entitled to judgment as a matter of law, the court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Properties, Inc. v. Salvino, Inc.*,  542 F.3d 290, 309 (2d Cir. 2008).  However, "[i]n order to defeat a properly supported summary judgment motion, the opposing party must proffer admissible evidence that 'set[s] forth specific facts' showing a genuinely disputed factual issue that is material under the applicable legal principles." *Id*. (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### A.  Procedural Due Process

"The fundamental requisite of due process of law is the opportunity to be heard." *Goss v. Lopez*, 419 U.S. 565, 579 (1975) (internal quotation marks omitted).  Such opportunity must be granted within a meaningful time and manner, *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965), and be "appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,*

---

[1] This case was initially assigned to Judge Stephen C. Robinson.  It was reassigned to me on June 5, 2009.
[2] Because John Sala, Jr. was reinstated to the football team to finish the season, Plaintiff's claims for injunctive relief are moot and only the prayer for monetary damages and attorneys' fees remains relevant.

339 U.S. 306, 313 (1950).  However, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  Such constitutionally protected interests are created and defined by "existing rules or understandings that stem from an independent source, such as state law." *Id.* at 577.

Defendants cite numerous cases that generally stand for the proposition that "there is no constitutional right to participate in extracurricular sporting activities." *Hadley v. Rush Henrietta Cent. School Dist.*, No. 05 Civ. 6331 (MAT), 2007 WL 1231753, 3 (W.D.N.Y. Apr. 25, 2007); *see also, Gardner v. Wansart*, No. 05 Civ. 3351 (SHS) 2006 WL 2742043, 5 (S.D.N.Y. Sep. 26, 2006) ("[D]ue process need not accompany a public school's decision to remove a student from involvement in extracurricular activities.")  However, I need not decide whether on these facts John Sala, Jr. had a protectable liberty interest in his reputation or a property interest in his participation on the football team or in the expectancy of a college scholarship because Defendants afforded him all the process that was due.  *See*, *e.g.*, *Segal v. City of New York*, 459 F.3d 207, 211 (2d Cir. 2006) (availability of adequate process defeats a so-called stigma-plus claim alleging injury to reputation); *Mazevski v. Horseheads Cent. School Dist.*, 950 F.Supp. 69, 73, n.2 (W.D.N.Y. 1997) (due process provided where student was informed of reason for dismissal from marching band and parents were "afforded an opportunity to present their side of the story before a final determination was made").

Here, Plaintiff was afforded an opportunity to speak with Coach Sciarra both before and after the coach dismissed John Sala, Jr. from the team.  Thereafter Plaintiff was permitted to appeal the decision to Superintendant Greenhall prior to the date John Sala, Jr. would have been eligible to rejoin the team pursuant to his earlier suspension.  The District's attorney sent a letter to Plaintiff's counsel that expressly stated counsel's understanding of the specific reason for the dismissal: namely, that after being told to slow down in the parking lot, John Sala, Jr. "responded by directing profanity at Mr. Russo [and] continued to drive inappropriately on school grounds." Wolverton Aff., Ex. A.  Plaintiff was represented by counsel at the October 2, 2006 meeting with Superintendant Greenhall and, according to his own pleadings, he was offered an opportunity to "present [his] side of the story" at that meeting.  *Mazevski*, 950 F.Supp. at 72, n. 2; *see*, *e.g.*, Am. Compl. ¶35 (alleging that at the meeting Plaintiff and his counsel noted that "John Sala, Jr. had done nothing to warrant his dismissal from the football team").  One day later, Superintendant Greenhall set forth his decision to uphold the dismissal in a letter that detailed not only the

arguments raised by Plaintiff at the meeting, but also the specific basis for his decision. Greenhall Aff., Ex. B.  The letter also expressly informed Plaintiff of his right to appeal the matter to the Board of Education.  *Id.*  Under these circumstances, Plaintiff was provided with the adequate and timely due process consistent with not only the decisions of courts in this Circuit, *see Mazevski*, 950 F.Supp. at 72, n. 2, but also those of the New York State Commissioner of Education. *See*, *e.g.*, *Appeal of Latterell*, N.Y. Ed. Dept. Rep. Dec. No. 13,608 (May 17, 1996) (no formal evidentiary hearing required where student athlete dismissed from team on the basis of "conduct unbecoming of an athlete"; opportunity for parents to meet with appropriate school committee was sufficient). Accordingly, Defendants' motion to dismiss Plaintiff's procedural due process claims is GRANTED.

### B.  Substantive Due Process

Plaintiff's substantive due process claims also fall woefully short.  It is well established that "[t]he Fourteenth Amendment does not protect a public education as a substantive fundamental right." *Handberry v. Thompson*, 446 F.3d 335, 352 -353 (2d Cir. 2006) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973); *Plyler v. Doe*, 457 U.S. 202, 221 (1982).  If public education generally is not a "righted granted to individuals by the Constitution," *Plyler*, 457 U.S. at 221, Plaintiff's claim that his son has an individual and constitutionally protected right to play high school football or to receive precisely the same disciplinary treatment as other members of the team involved in the beer incident borders on the absurd.  Furthermore, Defendant's conduct cannot be plausibly considered "'so egregious, [or] so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8 (1998)).  Finally, even if the conduct were "conscience-shocking," the rights alleged to be violated are protected by other more specific constitutional provisions which is alone fatal to Plaintiff's substantive due process claims.  *Id.* at 94.  Accordingly, Defendant's motion for summary judgment on Plaintiff's substantive due process claims is GRANTED.

### C.  First Amendment Retaliation

In this factual context, to establish a claim of retaliation in violation of the First Amendment, Plaintiff must show that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  "Specific proof of improper motivation is

required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." *Id.*; *see also Bryant v. City of New York*, No. 99 Civ. 11237 (LMM), 2003 WL 22861926, *13 (S.D.N.Y. Dec. 2, 2003) (granting summary judgment on first amendment retaliation claim where plaintiff could point to evidence that tended to establish link between alleged retaliation and retaliatory motive).

Here, Plaintiff cannot point to evidence that tends to establish the link between the protected activity of filing of this law suit and the alleged act of retaliation, *i.e.* Coach Sciarra's decision not to give John Sala, Jr. substantial playing time once he returned to the team. In a sworn affidavit, Coach Sciarra states that his decisions with respect to John Sala, Jr.'s participation on the football team were not motivated by retaliation, but were instead "based on a range of other factors, including John's preparedness to play; [and] the preparedness, commitment, and efforts in practice and in games of the other members of the football team." Sciarra Aff. ¶5. Even if the Court discounts the weight of somewhat conclusory statements in the affidavit the alleged retaliator, Plaintiff proffers no evidence that tends to link Sciarra's coaching decisions to this litigation.[3] Rather, in opposing summary judgment Plaintiff points only to allegations that John Sala, Jr. was one of the team's "recognized stars" who "kept himself in shape" and that Sciarra stated he "wanted to make things right" following the incident in the parking lot. Pl.'s Opp'n. at 36. On the basis of these slim factual allegations, Plaintiff contends the "the sequence of events" is such that a jury will "view the coach's conduct as entirely retaliatory." But given Coach Sciarra's wide latitude to make coaching decisions and his sworn statements as to the legitimate basis for the decisions about which Plaintiff complains, pointing

---

[3] Indeed, Plaintiff's own deposition testimony tends to confirm the absence of facts that would tend to establish the requisite link. For example, at his deposition, Plaintiff testified as follows:

Q:  Do you know who made the decision whether or not to play John in those games?
A:  No.
Q:  Do you know the basis upon which whoever made the decision made their decision?
A:  No.
Q:  Have you ever heard anybody from the district talking about why John did or did not play in games after the court issued the TRO?
A:  No.
Q:  Have you ever heard Superintendant Greenhall talk about why John did or didn't play in those games?
A:  No.
Q:  How about Coach Sciarra, have you ever heard him talk about why John did or didn't play in those games?
A:  No.

John Sala Dep. 94.

to nothing more than that the alleged retaliation followed the protected activity is not the "[s]pecific proof of improper motivation [that] is required in order for [Plaintiff] to survive summary judgment on [his] First Amendment retaliation claim." *Curley*, 268 F.3d at 73. Accordingly, Defendants' motion for summary judgment on this claim is GRANTED.

### D. Breach of Contract

Finally, because Plaintiff points to no facts that demonstrate a genuine issue as to whether the Settlement Agreement was breached, Plaintiff's breach of contract claim must be dismissed. *See, e.g.*, *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996) (act allegedly in violation of contract is necessary element of breach of contract claim).

Plaintiff claims that Defendants breached the written Settlement Agreement by permanently dismissing John Sala, Jr. from the football team even though he had met the conditions set by the agreement for reinstatement to the team. But by its express terms, the Settlement Agreement resolved the dispute over the appropriate sanction for the beer/marijuana incident at the Sala's home and predates the parking lot incident that led to John Sala, Jr.'s dismissal from the team. Greenhall Aff. Ex. A. The settlement agreement did not immunize John Sala, Jr. from discipline for *future* misconduct, but rather set the conditions precedent to his reinstatement to the team after the beer/marijuana incident. The dismissal thus could not have violated the Settlement Agreement. Because Plaintiff fails to point to evidence that establishes a genuinely disputed factual issue as to whether the Settlement Agreement was breached, Defendants' motion for summary judgment on this claim is GRANTED.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to close this and any open motions and to close this case and remove it from my docket.

SO ORDERED
July 27 2009
New York, New York

U.S.D.J.

7